United States District Court
Middle District of Florida
Jacksonville Division

**SEA LA VIE, LLC,**

 *Plaintiff,*

V.                  No. 3:18-CV-641-J-32PDB

**CAPTAIN CURT W. FISHER,**

 *Defendant.*

---

## Report & Recommendation

Sea La Vie, LLC, sues Captain Curt Fisher for negligence in the movement of a vessel by navigable water. Doc. 1. Before the Court is Sea La Vie's amended motion for default judgment, Doc. 12, and supplemental memorandum of law, Doc. 16.

### I. Background

#### A. *Complaint*

In the complaint, Doc. 1, Sea La Vie makes the following allegations.

Sea La Vie owns the M/Y *Last Desperado*, a 52-foot 1986 Hatteras Convertible. Doc. 1 ¶ 2. State Farm Insurance Company insured *Last Desperado*. Doc. 1 ¶ 2.

Captain Fisher, a Florida resident, agreed to move *Last Desperado* by water from St. Augustine, Florida, to Charleston, South Carolina. Doc. 1 ¶¶ 3–4. On July 22, 2017, he boarded *Last Desperado* and reached the Charleston Harbor. Doc. 1 ¶ 3. *Last Desperado* lost power, and he unsuccessfully tried to restart the engines. Doc. 1 ¶ 3. He did not anchor *Last Desperado*, and it drifted into jetties, partially sank, and sustained damages. Doc. 1 ¶ 3. State Farm paid for the damage to *Last Desperado*

and a portion of the cost of the wreck removal. Doc. 1 ¶ 3. Sea La Vie paid the rest of the cost of the wreck removal and a storage fee for *Last Desperado*. Doc. 1 ¶ 3.

Sea La Vie claims Captain Fisher owed Sea La Vie a duty of reasonable care to ensure *Last Desperado* "arrived safely in Charleston and that it did not sink," he breached that duty, and the breach resulted in damages to Sea La Vie. Doc. 1 ¶¶ 5–7. Sea La Vie demands those damages, interest, and costs. Doc. 1 at 2.

### B. *Service of Process*

Sea La Vie filed the complaint on May 14, 2018. Doc. 1. Sea La Vie filed no proof of service, and Captain Fisher failed to appear to defend the case. On September 6, 2018, the Court directed Sea La Vie to show cause by September 24, 2018, why the case should not be dismissed without prejudice for failure to demonstrate service of process under Federal Rule of Civil Procedure 4(m).[1] Doc. 4. Sea La Vie timely responded, filing both proof of service of the summons and a response to the show-cause order. Docs. 5, 6.

The proof of service is a "Sheriff's Return of Service." Doc. 5-1 at 1. In it, Michael Chitwood, the Sheriff of Volusia County, Florida, through Richard Ott, a process server, certifies that he received copies of the summons and complaint on May 25, 2018, at 1:12 p.m., and served Captain Fisher with them on May 30, 2018, at 7:15 a.m, at 189 Gisbon [sic] Way Port Orange, Florida, 32129. Doc. 5-1 at 1. Regarding the manner of service, he states, "INDIVIDUAL SERVICE: by serving the within named person a true copy of the writ, with the date and hour of service endorsed thereon by me and at the same time delivering to the above named person a copy of

---

[1]Under Rule 4(m), if a defendant is not served within 90 days of the filing of the complaint, the court must dismiss the case or order service be made within a specified time. Rule 4(l) provides that "proof of service must be made to the court" unless the defendant waives service.

the complaint, petition or initial pleading, if any." Doc. 5-1 at 1. Next to "Service by," the return lists "Process Server Ott, Richard 7612." Doc. 5-1 at 1.

In response to the show-cause order, Sea La Vie explained it had filed the return of service, stated it "will be filing a Motion for Default and Motion for Final Default Judgment this week [the week of September 25]," and asked the Court to not dismiss the case until after entry of default judgment against Captain Fisher. Doc. 6. The Court discharged the order to show cause. Doc. 7.

## II. Motion for Default Judgment

Two months after the response to the show-cause order, Sea La Vie had filed no motions for default or default judgment. On November 30, 2018, the Court directed Sea La Vie to show cause by December 18, 2018, why the case should not be dismissed for failure to prosecute and explained that failure to respond by the deadline would result in dismissal without further notice. Doc. 8. Sea La Vie timely filed a motion for default, Doc. 9, a motion for default judgment, Doc. 10, an amended motion for default judgment, Doc. 12, and a response to the show-cause order, Doc. 11.[2]

In response to that show-cause order, Sea La Vie explained it had filed the motions for default and default judgment that day and asked the Court to not dismiss the case until after entry of final judgment against Captain Fisher. Doc. 11. The clerk entered default, Doc. 13, and the Court discharged the second order to show cause, Doc. 14.

In the amended motion for default judgment, Sea La Vie seeks $95,941 in damages for wreck removal, demolition, and storage fees for *Last Desperado*. Doc. 12 at 1.

---

[2]Sea La Vie filed the motion and amended motion for default judgment on the same day, Docs. 10, 12, and the original motion was terminated.

3

Sea La Vie attaches a declaration from Heather Chronos. Doc. 12-1. She states she is the president of Sea La Vie, which owns *Last Desperado*. Doc. 12-1. She states *Last Desperado* was a "total loss" when it sank. Doc. 12-1. She states State Farm paid the policy limits for *Last Desperado*—$157,000—and the policy limits for wreck removal—$7850. Doc. 12-1. She states the State of South Carolina required her to remove the sunken vessel, and she hired Salmons Dredging Corporation for the removal. Doc. 12-1. Salmons charged her $103,791: $81,416 for the removal and $22,375 for "disposal of the vessel plus storage prior to disposal." Doc. 12-1. She states that, because State Farm paid $7850 for wreck removal, Sea La Vie paid the balance—$95,941 (the amount it seeks in damages)—to Salmons. Doc. 12-1.

In a second declaration, Ms. Chronos states Captain Fisher is not in the military, is semi-retired, and to her "knowledge does not currently have a job."[3] Doc. 16-1.

Sea La Vie attaches the invoice from Salmons for the wreck removal. Doc. 12-2. The invoice is dated August 1, 2017, and states, "For: Our Job No: 17D-62: July 25–27, 2017–Providing floating crane, tug, dive boat platform, commercial dive team, incidental rigging, and oll [sic] boom to remove wreckage of M/V LAST DESPERADO, offshore Sullivan's Island, SC. Wreckage unloaded at Salmons Terminal, Charleston, SC." Doc. 12-2. The unit and total price is $81,416. Doc. 12-2.

---

[3]The second declaration is attached to the supplemental memorandum of law. Docs. 16, 16-1. In the amended motion for default judgment, under the heading "Memorandum of Law," Sea La Vie wrote only, "Federal Rule of Civil Procedure 55(b)(2)." Doc. 12 at 2. The undersigned directed Sea La Vie to supplement the motion with a statement and citation to authority concerning which jurisdiction's law governed the negligence claim and the elements of a claim under that law; a citation to authority regarding subject-matter jurisdiction and an analysis of how it applied here; and a statement or declaration explaining whether Captain Fisher is in the military. Doc. 15.

Sea La Vie attaches an email regarding the costs for the storage and disposal of *Last Desperado*. Doc. 12-3. The email is from Jack Harrelson, a Salmons employee, to Ms. Chronos, on December 6, 2017. Doc. 12-3. Mr. Harrelson states,

> I spoke with Mr. Salmons this morning. He has agreed to allow me to reduce the demo/disposal fee by another thousand dollars. Please forward a check as outlined below and when the check is received, he will stop the storage charges and will authorize Operations to schedule the demolition of the vessel.
>
> - Original demo/disposal cost estimate = $18,975.00
> - Reduction in demo/disposal fees = ($ 3,000.00)
>
> Revised total for demo/disposal = $15,975.00
>
> - Storage fees $50/Day x 128 Days= $6,400.00 (If check is received by close of business on Friday 12/8/2017)
>
> Total Amount Due Prior to Demo/Disposal    $22,375.00

Doc. 12-3.

Sea La Vie attaches a printout of "Account Activity Transaction Details" for a Bank of America account. Doc. 12-4. It includes a picture of a check dated October 4, 2017, from Ms. Chronos to Salmon Dredging for $81,416 and shows the "post date" as October 5, 2017. Doc. 12-4.

Sea La Vie attaches a copy of another check dated December 12, 2017, from Ms. Chronos to Salmon Dredging for $22,375. Doc. 12-5.

### III.    Law and Analysis

#### A.    *Subject-Matter Jurisdiction*

Federal courts have an independent obligation to ensure subject-matter jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Article III, section 2, of the United States Constitution extends judicial power "to all Cases of admiralty and maritime Jurisdiction." Congress implemented this

5

jurisdictional grant in 28 U.S.C. § 1333(1), which provides, "The district courts shall have original jurisdiction, exclusive of the courts of the States, of … [a]ny civil case of admiralty or maritime jurisdiction saving to suitors in all cases all other remedies to which they are otherwise entitled."

Under § 1333(1), federal courts have exclusive jurisdiction over in rem actions, but the saving-to-suitors clause allows in personam actions in state court or in federal court under diversity or maritime jurisdiction "governed by federal principles of admiralty and maritime law that control the respective rights and liabilities of the parties." *Diesel "Repower," Inc. v. Islander Invests. Ltd.*, 271 F.3d 1318, 1322 (11th Cir. 2001).

"Maritime jurisdiction over torts is based on the location of the incident and a nexus to maritime activity." *Minott v. M/Y BRUNELLO*, 891 F.3d 1277, 1282 (11th Cir. 2018). A district court has jurisdiction if the tort occurred on navigable water and has sufficient connection with maritime activity. *Id.* A tort has sufficient connection with maritime activity if the "potential hazard to maritime commerce arises out of activity that bears a substantial relationship to traditional maritime activity." *Mink v. Genmar Indus., Inc.*, 29 F.3d 1543, 1546 (11th Cir. 1994) (quoted authority omitted); *see also Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 669 (1982) (finding maritime jurisdiction over a negligence claim regarding a collision of two pleasure boats on a Louisiana river).

As Sea La Vie contends, because the tort (negligence) occurred in navigable waters (Charleston Harbor), bears a substantial relationship to traditional maritime activity (navigating and delivering a vessel), and involved a potential hazard to maritime commerce (sinking and causing potential disruption to other vessels), the Court has maritime jurisdiction over the action. *See* Doc. 1 ¶¶ 1–3; Doc. 16 at 2–3.

### B. Service of Process

A plaintiff may serve an individual defendant in the United States by delivering a copy of the summons and complaint "to the individual personally" or to "the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," Fed. R. Civ. P. 4(e)(2)(A)–(B). Before obtaining default judgment, a plaintiff must obtain entry of default by showing the defendants have failed to plead or defend.[4] *See* Fed. R. Civ. P. 55(a).

Sea La Vie established that it properly served Captain Fisher through the "Sheriff's Return of Service," in which the process server declares under penalty of perjury he served the summons and complaint by giving it to Captain Fisher. *See* Doc. 5-1.

### C. Servicemembers Civil Relief Act

The Servicemembers Civil Relief Act requires a plaintiff seeking default judgment to file an affidavit indicating whether the defendant is in the military or

---

[4]"[A] district court may not enter judgment against a party who is not properly before it." *Aetna Bus. Credit, Inc. v. Univ. Decor & Design, Inc.*, 635 F.2d 434, 436 (5th Cir. Unit A Jan. 27, 1981). Serving a summons establishes personal jurisdiction over a defendant subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located. Fed. R. Civ. P. 4(k)(1)(A). Florida circuit courts have general jurisdiction over Florida residents "regardless of the county in which they reside and when reached by summons, they become subject to the orders and decrees of the Court." *Patten v. Mokher,* 184 So. 29, 30 (1938); *see also Subic Bay Marine Exploratorium, Inc. v. JV China, Inc.*, 257 So.3d 1139, 1141 (5th DCA 2018) ("Florida residents are subject to the general jurisdiction of Florida courts."). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 924 (2011) (citation omitted). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Super. Ct of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (emphasis in original).

The Court has jurisdiction over Fisher because he is a Florida resident. Doc. 1 ¶ 4.

7

whether the plaintiff cannot determine the defendant's military status. 50 App. U.S.C. § 521.

Sea La Vie has submitted Ms. Chronos's declaration stating Captain Fisher is not in the military. Doc. 16-1. Sea La Vie has complied with the Act's requirements.

### D. Claim

After entry of default, the court or the clerk may enter default judgment. Fed. R. Civ. P. 55(b)(1). By defaulting, the defendant admits all well-pleaded factual allegations in the complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). Before entering default judgment, the court must ensure the well-pleaded factual allegations state a claim on which relief may be granted. *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975).

"General maritime law incorporates the general law of torts when not inconsistent with the law of admiralty." *Harrison v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 968, 977 (5th Cir. 1978). Courts should therefore apply maritime law, not state law, in a maritime-tort case. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959). "This framework … intends that a consistent, uniform system will govern maritime commerce." *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico*, 808 F. Supp. 2d 943, 953–54 (E.D. La. 2011).

In a maritime case, "[t]o plead negligence, a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the

8

plaintiff's injury; and (4) the plaintiff suffered actual harm."[5] *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

A boat captain has a duty of reasonable care and breaches that duty by making "a decision which nautical experience and good seamanship would condemn as inexpedient and unjustifiable at the time and under the circumstances." *Sawyer Bros., Inc. v. Island Transporter, LLC*, 887 F.3d 23, 29 (1st Cir. 2018).

"When a vessel is an actual or constructive total loss, … the measure of damages is the market value of the vessel less the value of salved equipment or materials."[6] *B&M Towing Co. v. Wittliff*, 258 F.2d 473 (5th Cir. 1958); *accord Orange Beach Water, Sewer, and Fire Prot. Auth. v. M/V Alva*, 680 F.2d 1374, 1383 (11th Cir. 1982).

Generally, total-loss damages do not include "loss of use or other consequential damages." *Albany Ins. Co. v. Bengal Marine, Inc.*, 857 F.2d 250, 253 (5th Cir. 1988). But "recovery has been permitted in total loss cases for what can be described as 'unavoidable' costs." *In re Hlywiak*, 613 F. Supp. 2d 647, 650 (D. N.J. 2009). Unavoidable costs "flow directly from a collision—such as the need to raise the vessel to determine if it is a total loss, or to move the vessel from obstructing the waterways."[7] *Id.* at 653. See, for example, *Nieves v. Cooper Marine & Timberlands*

---

[5]The Rivers and Harbor Act (which Sea La Vie does not cite) provides that it is unlawful to sink or allow to be sunk a vessel in navigable channels. 33 U.S.C. § 409. It is the owner's duty to "commence the immediate removal" of the vessel and "prosecute such removal diligently." *Id.* "[F]ailure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States[.]" *Id.* If the owner raises the vessel, she may "seek recovery of the expenses from the party responsible for the sinking[.]" *Tenn. Valley Sand & Gravel Co. v. M.V. Delta*, 598 F.2d 930, 934 (5th Cir. 1979).

[6]"A constructive total loss case is one that involves a vessel whose damage is repairable but the cost of repairs exceeds the pre-collision value." *In re Hlywiak*, 613 F. Supp. 2d 647, 649 (D. N.J. 2009) (internal quotations omitted).

[7]A collision is "[t]he contact of two or more moving vessels." *Collision*, BLACK'S LAW DICTIONARY (9th ed. 2009). An allision is "[t]he contact of a vessel with a stationary object

*Corp.*, No. 3:15CV00350 JLH, 2018 WL 1855953, at *11–12 (E.D. Ark. Apr. 18, 2018) (unpublished) (awarding damages for recovering, towing, and fleeting the vessel in a total-loss case); *Tucker Energy Servs., Ltd. v. Hydraquip Corp.*, No. H-05-1265, 2007 WL 2409571, at *1–3 (S.D. Tex. Aug. 20, 2007) (unpublished) (awarding damages for wreck-removal costs in a total-loss case because the owner had to remove the wreck and the reasonable costs were directly incurred because of the tortfeasor); Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW, § 14:7 (6th ed. 2018) ("Out of pocket costs incidental to a marine casualty loss are also fully recoverable if reasonably incurred. These may include removal or marking of a wreck, oil spill removal and containment, surveys, salvage, removal of cargo, wharfage, drydocking, general average expenses, crew expenses, and caring for the damaged vessel.").

Sea La Vie's well-pleaded factual allegations state a claim upon which relief may be granted. The complaint, invoices, and copies of checks establish Captain Fisher owed a duty of reasonable care to Sea La Vie while transporting *Last Desperado* from Florida to South Carolina; he breached that duty by failing to anchor *Last Desperado* after it lost power; the breach actually and proximately caused *Last Desperado* to drift into the jetties and sink; Sea La Vie suffered harm because *Last Desperado* was a total loss, and Sea La Vie is damaged in the amount of $95,941. Doc. 1 ¶¶ 1–3; Docs. 12-2–12-5. Regarding damages, State Farm paid for the actual loss of *Last Desperado* and part of the wreck removal, and Sea La Vie paid the balance after being required to remove the sunken vessel by the State of South Carolina. Doc. 12-1. The damages—for wreck removal, care of, and ultimate disposal of *Last Desperado*—are reasonable and properly awarded as costs directly flowing from the wreck.[8]

---

such as an anchored vessel or a pier." *Allision*, BLACK'S LAW DICTIONARY (9th ed. 2009). "In modern practice, 'collision' is often used where 'allision' was once the preferred term." *Id*.

[8]Rule 54(c) provides, "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant

IV.     Recommendations[9]

The undersigned **recommends**:

1.      **granting** the amended motion for default judgment, Doc. 12; and

---

the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."

In awarding damages for the value of the vessel, "[I]t [is] within the discretion of the Court … to allow interest from the date of the collision." *Carl Sawyer, Inc. v. Poor*, 180 F.2d 962, 963 (5th Cir. 1950). "As a general rule, prejudgment interest should be awarded in admiralty cases—not as a penalty, but as compensation for the use of funds to which the claimant was rightfully entitled. Discretion to deny prejudgment interest is created only when there are 'peculiar circumstances' that would make it inequitable for the losing party to be forced to pay prejudgment interest." *Noritake Co., Inc. v. M/V Hellenic Champion*, 627 F.2d 724, 728 (5th Cir. Unit A 1980). Such a circumstance includes, for example, the plaintiff's delay in prosecuting the case. *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 196 (1995). "Other circumstances may appropriately be invoked as warranted by the facts of particular cases." *Id.*

In the complaint, Sea La Vie requests damages "plus interest and costs" without specifying prejudgment interest. Doc. 1 at 2. Sea La Vie does not request prejudgment interest in the amended motion for default judgment, does not provide law on the issue, and does not indicate when such interest would accrue, given that State Farm has already paid for the value of *Last Desperado* (the normal measure of damages and for which the allision is the prejudgment accrual date). *See generally* Doc. 12. For these reasons, awarding prejudgment interest is unwarranted here.

[9]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

2. **directing** the clerk to separately enter final judgment for Sea La Vie, LLC, and against Captain Curt Fisher in the amount of $95,941 and then close the case.

**Entered** in Jacksonville, Florida, on July 26, 2019.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c: Counsel of Record

The Honorable Timothy J. Corrigan

Captain Curt W. Fisher
189 Gibson Way
Port Orange, FL 32129